In the Matter of Ronald P. Crean (Admitted as Ronald Patrick Crean), an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, April 1, 1982

APPEARANCES OF COUNSEL

*Michael A. Gentile* for petitioner.

No appearance on behalf of respondent.

OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to practice as an attorney and counselor at law by the Appellate Division, First Department, on October 27, 1972. Thereafter, he maintained an office for the practice of law in this department.

Sometime in October, 1978, respondent was retained by Hospital Credit Exchange (Exchange) to act as its collection attorney. Exchange is a credit and collection agency which numbers among its clients Mental Retardation Institute (MRI). In November, 1978, MRI referred to Exchange a claim which it had against the Commissioner of Social Services of Sullivan County for services furnished to residents of that county and for which MRI was entitled to Medicaid reimbursement. Exchange, in turn, referred the matter to respondent for collection.

Some time prior to July 28, 1980, respondent settled MRI's claim for the sum of $33,553.12. A release executed by a duly authorized officer of MRI was forwarded to respondent who, in turn, transmitted it to the Commissioner of Social Services of Sullivan County. On July 28, 1980, the Department of Social Services forwarded its check, dated July 24, 1980, in the sum of $33,553.12 to respondent. The payees listed on the check were "Mental Retardation Institute, New York Medical College and Ronald P. Crean, Atty". On July 29, 1980, the check was deposited to the account of "Ronald P. Crean, Atty., Special" in the Chemical Bank. Neither MRI nor New York Medical College authorized respondent or anyone else to indorse the check on its behalf.

Commencing with August 7, 1980 the amount on deposit in respondent's special account dipped below $33,553.12. On August 7, the balance fell to $28,758.78. On August 27, it dropped as low as $2,395.02. Thereafter it fluctuated from a low of $30.40 to a high of $19,092.71. During this period and up to and including the present time no portion of the moneys due to MRI has been paid to it or to Exchange although repeated demand for such payment has been made.

Charges were filed with the departmental disciplinary committee which designated a panel of its members to conduct a hearing thereon. The notice of the charges and the time and place of hearing were served upon respondent. However, respondent did not appear at the hearing and no defense was offered on his behalf.

On the basis of the evidence adduced the conclusion is inescapable that respondent has converted the funds belonging to his client. In *Matter of Marks* (72 AD2d 399) we made crystal clear that any attorney who converts funds entrusted to his custody is, presumptively, unfit to be a member of the Bar. "This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds" (72 AD2d, at p 401).

Since that time we have steadfastly adhered to that rule (*Matter of Nadel,* 85 AD2d 8; *Matter of Field,* 79 AD2d 198;

*Matter of Stults,* 77 AD2d 254; *Matter of Wolf,* 73 AD2d 419). We now reaffirm it.

Accordingly, the report of the hearing panel of the departmental disciplinary committee is confirmed, respondent should be disbarred and respondent's name shall be stricken from the roll of attorneys and counselors at law.

Ross, J. P., MARKEWICH, BLOOM, FEIN and MILONAS, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors at law in the State of New York.