In the Matter of RONALD D. SALINGER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 22, 1982

**APPEARANCES OF COUNSEL**

*Sarah Diane McShea* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Ronald M. Gardner* for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

Respondent was admitted to practice as an attorney in March of 1974 by the Appellate Division of the Supreme Court, Second Judicial Department. At all times relevant to the instant proceeding, he maintained an office for the practice of law in the First Judicial Department.

In December of 1979, Jacoby & Meyers hired respondent as managing attorney for its offices at 3411 Jerome Avenue in Bronx County. Between the time that he began his employment with the firm in January of 1980 until November of 1980, when he left the job, respondent received at least $14,000 on behalf of Jacoby & Meyers from clients who consulted or retained the firm. Of that amount, respondent converted at least $8,800 for his own use without the permission or consent of Jacoby & Meyers or its clients.

The respondent effected this conversion in at least two ways. In some instances he instructed the firm's clients to make their checks for fees, costs or both payable directly to him. In other instances, he received and pocketed cash payments given to him by clients who believed that they were paying the firm fees for services to be rendered. In neither case did the respondent report the client's payment to the firm. When he was eventually confronted with a discrepancy in Jacoby & Meyers' accounting records by one of the firm's partners, respondent acknowledged that he had taken the money. At the hearing he stated that his conduct was prompted by what he describes as a "gambling situation", by "severe financial problems. I had gotten way over my head in living at a life-style which I could not afford," and by his wife's alleged illness.

In April of 1980, respondent executed a formal agreement to make restitution to Jacoby & Meyers. The restitution was for a total of $14,158.50, consisting of the $8,800 appropriated plus the sum of $5,300 which Jacoby & Meyers testified that it had returned to clients who claimed to be dissatisfied with the handling of their cases.

In its notice of charges, dated May 7, 1981, the Departmental Disciplinary Committee for the First Judicial Department alleged that respondent had engaged in conduct constituting conversion, dishonesty, fraud, deceit and misrepresentation, citing DR 1-102 (A) (4) of the Code of Professional Responsibility. On July 8, 1981, following a hearing in connection with the matter, a panel sustained the charges and advised respondent that it would recommend that he be suspended from the practice of law for a period of five years. The ensuing findings of fact and conclusions of law, dated April 29, 1982, referred to respondent's previously unblemished record, the fact that no evidence was offered to demonstrate that any client's case had been mishandled and that Jacoby & Meyers had been fully reimbursed. Respondent, in concurring with the committee's proposal for a five-year suspension, argues, in effect, that since he did not misappropriate escrow funds entrusted to him by clients but rather took his employer's money, *Matter of Nadel* (85 AD2d 8) is therefore distinguishable.

Since *Matter of Marks* (72 AD2d 399), this court has consistently held that disbarment is the appropriate penalty for conversion from a client. (See *Matter of Nadel, supra; Matter of Field,* 79 AD2d 198; *Matter of Stults,* 77 AD2d 254; and *Matter of Wolf,* 73 AD2d 419.) There is no significant difference between funds deposited in escrow, on the one hand, and those which are otherwise entrusted to an attorney, on the other. (In *Matter of Shuchman,* 63 AD2d 547, the court disbarred an attorney who converted stock held by him as trustee.) As the court recently stated in *Matter of Crean* (86 AD2d 107, 108): "In *Matter of Marks* (72 AD2d 399) we made crystal clear that any attorney who converts funds entrusted to his custody is, presumptively, unfit to be a member of the Bar. 'This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public and to vindicate the public's trust in lawyers as custodians of clients' funds' (72 AD2d at p. 401)."

Clearly, the respondent's conduct in the instant situation falls within the rationale of *Matter of Marks (supra)* and its progeny. Involved here is a series of separate conversions of moneys paid by clients to the respondent, in his capacity as a lawyer, for legal services and disbursements. In fact, the extent of the appropriation was such that both the respondent and Jacoby & Meyers were not able to determine the precise amount taken. In addition, the excuses offered by the respondent in mitigation are unpersuasive.

Consequently, the motion by the Departmental Disciplinary Committee to confirm the findings of fact and conclusions of law should be granted to the extent of confirming respondent's guilt and ordering that he be disbarred and his name stricken from the roll of attorneys and counselors at law.

CARRO, J. P., MARKEWICH, LUPIANO, SILVERMAN and MILONAS, JJ., concur.

Respondent disbarred as an attorney and counselor at law in the State of New York, effective August 23, 1982.